















KAJ    1/23/03     13:44

3:03-CV-137 ORGANIZATION FOR V. HANDLERY HOTEL

*1*

*CMP.*



1
**PINNOCK & WAKEFIELD**
Theodore A. Pinnock, Esq.          Bar #: 153434

2
David C. Wakefield, Esq.           Bar #: 185736
Michelle L. Wakefield, Esq.        Bar #: 200424

3
7966 Arjons Drive, Suite 119
San Diego, CA 92126

4
Telephone: (858) 689-1750
Facsimile: (858) 689-1950

5
Attorneys for Plaintiffs                       DEPUTY

6

7

8
                    UNITED STATES DISTRICT COURT

9
                  SOUTHERN DISTRICT OF CALIFORNIA

10
**ORGANIZATION FOR ACCESSIBLE**      Case No.: **'03 CV 00137 J   (AJB)**

11
**RIGHTS IN THE NEW MILLENNIUM**
**SUING ON BEHALF OF WALTER LEE**     **CIVIL COMPLAINT:**

12
**DEGROOTE AND ITS MEMBERS; and**     DISCRIMINATORY PRACTICES IN
**WALTER LEE DEGROOTE, An**           PUBLIC ACCOMMODATIONS

13
**Individual,**                       [42 U.S.C. 12182(a) ET. SEQ;
                                      CIVIL CODE 51, 52, 54, 54.1;

14
                  Plaintiffs,         HEALTH & SAFETY CODE 19995;
                                      BUSINESS & PROFESSIONS CODE

15
     **v.**                           17200 et. seq.]

16

17
**HANDLERY HOTEL AND RESORT,**        NEGLIGENCE
**a.k.a. HANDLERY HOTEL AND**         [CIVIL CODE 1714(a), 2338,

18
**COUNTRY CLUB; HANDLERY**            3333, 3294; EVIDENCE CODE
**HOTELS, INC.; HANDLERY**            669(a)]

19
**HOLDING CO INC.;**
                                      DEMAND FOR JURY TRIAL

20
And                                   [F.R.Civ.P. rule 38(b); L.R.
                                      38.1

21
**DOES 1 THROUGH 10,** Inclusive.

22
                  Defendants.

23

24

25
                      **INTRODUCTION**

26

27
     Plaintiffs ORGANIZATION FOR ACCESSIBLE RIGHTS IN THE NEW

28
MILLENNIUM SUING ON BEHALF OF WALTER LEE DEGROOTE AND ITS MEMBERS

and WALTER LEE DEGROOTE, An Individual, herein complain, by filing

                                  1

this Civil Complaint in accordance with rule 8 of the Federal Rules of Civil Procedure in the Judicial District of the United States District Court of the Southern District of California, that Defendants have in the past, and presently are, engaging in discriminatory practices against individuals with disabilities, specifically including minorities with disabilities. Plaintiffs allege this civil action and others substantial similar thereto are necessary to compel access compliance because empirical research on the effectiveness of Title III of the Americans with Disabilities Act indicates the Title has failed to achieve full and equal access simply by the executive branch of the Federal Government funding and promoting voluntary compliance efforts. Further, empirical research shows when individuals with disabilities give actual notice of potential access problems to places of public accommodation without a federal civil rights civil action, the public accommodations do not remove the access barriers.  Therefore, Plaintiffs make the following allegations in this federal civil rights action:

## JURISDICTION AND VENUE

1.    The federal jurisdiction of this action is based on the Americans with Disabilities Act, 42 United States Code 12101-12102, 12181-12183 and 12201, et seq.  Venue in the Judicial District of the United States District Court of the Southern District of California is in accordance with 28 U.S.C. § 1391(b) because a substantial part of Plaintiffs' claims arose within the Judicial District of the United States District Court of the Southern District of California.

## SUPPLEMENTAL JURISDICTION

2.    The Judicial District of the United States District Court of the Southern District of California has supplemental jurisdiction over the state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper in this action is because all the causes of action or claims derived from federal law and those arising under state law, as herein alleged, arose from common nucleus of operative facts.  The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was denied full and equal access to Defendants' facilities, goods, and/or services in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' facilities as described within paragraphs 7 through 25 of this Complaint.  Further, due to this denial of full and equal access Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and other minorities with disabilities were injured.  Based upon the said allegations the state actions, as stated herein, are so related to the federal actions that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

## NAMED DEFENDANTS AND NAMED PLAINTIFFS

3.    Defendants are, and, at all times mentioned herein, were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California. Defendant HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB is located at 950 Hotel Circle North, San Diego,

3

California, 92108.  Plaintiffs are informed and believe and thereon allege that Defendant HANDLERY HOTELS, INC., is the owner, operator, franchiser, franchisee, and/or lessor of the HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB. Defendant HANDLERY HOTELS, INC., is located at 180 Geary Street, Suite 700, San Francisco, California 94108.  Plaintiffs are informed and believe and thereon allege that Defendant HANDLERY HOLDING CO INC. is the owner, operator, and/or lessor of the property located at 950 Hotel Circle North, San Diego, California, 92108, Assessor Parcel Number 437-360-04.  Defendant HANDLERY HOLDING CO INC. is located at 180 Geary Street, Suite 700, San Francisco, California, 94108.

4.    The words "Plaintiffs" and "Plaintiff" as used herein specifically include the ORGANIZATION FOR ACCESSIBLE RIGHTS IN THE NEW MILLENNIUM, ORGANIZATION FOR ACCESSIBLE RIGHTS IN THE NEW MILLENNIUM SUING ON BEHALF OF WALTER LEE DEGROOTE, its Members, WALTER LEE DEGROOTE, and persons associated with its Members who accompanied Members to Defendants' facilities.  The words "Plaintiff's Members" and "Plaintiff's Member" as used herein specifically include ORGANIZATION FOR ACCESSIBLE RIGHTS IN THE NEW MILLENNIUM SUING ON BEHALF OF WALTER LEE DEGROOTE, its Members, WALTER LEE DEGROOTE, and persons associated with its Members who accompanied Members to Defendants' facilities.

5.    Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB; HANDLERY HOTELS, INC.; HANDLERY HOLDING CO INC. Plaintiffs are

ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will pray leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

6.    Plaintiffs are informed and believe, and thereon allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, franchisee, lessee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

## CONCISE SET OF FACTS

7.    Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE has a physical impairment and due to this impairment he has learned to successfully operate a wheelchair.

8.    On January 24, 2002, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE went to Defendants' HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB establishment to utilize their goods and/or services.

9.    When Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE patronized Defendants' HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB establishment, he had difficulty using the disabled parking, entrance, exterior path of travel, interior path of travel, customer service counter and guestroom facilities at

Defendants' establishment because they failed to comply with ADA Access Guidelines For Buildings and Facilities (hereafter referred to as "ADAAG") and/or California's Title 24 Building Code Requirements. Defendants failed to remove obstructions in the disabled parking, exterior path of travel, customer service counter, elevator, stair, entrance, interior path of travel, public restroom, pool, public payphone and guestroom facilities at Defendants' HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB establishment.

10.    Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE personally experienced difficulty with said access barriers in Defendants' xxx establishment.  For example, the driveway entrance on Hotel Circle fails to provide driveway signage; the requirement is to provide appropriate driveway signage placed conspicuously at each entrance to off street parking or immediately adjacent to, and visible from, each stall or space, indicating that automobiles illegally parking in disabled parking spaces will be towed. Within the parking areas, there are covered walkways that have signage indicating a maximum height ranging from 7 feet 8 inches to 7 feet 10 inches; the requirement is for all entrances and vertical clearances within a parking structure shall have a minimum height of 8 feet 2 inches where required for accessibility to accessible parking.  Also, there are three (3) designated accessible spaces that are located across from Building 1, all of which fail to provide the appropriate length; the requirement is to provide a space that is 14 feet wide, outlined to provide a 9-foot parking area and a 5-foot access aisle, that are 18 feet

long.   There are five (5) designated accessible parking spaces
across from the Hair Salon, two (2) of which fail to be
accessible.   For example, the First Space is not the appropriate
length and the Last Space has signage that is posted too low; the
requirement is to provide appropriate signage permanently posted
immediately adjacent to and visible from each stall or space.
This signage, when in the route of travel, must be mounted on a
post a minimum height of 80 inches from the bottom of the sign to
the finished grade of the space, or centered on the wall at the
interior end of the space a minimum of 36 inches from the finished
grade of the space, ground or sidewalk.   Additionally, Building 2
has a space designated as Van Accessible, which has signage that
is posted too low.   This space also fails to be properly striped;
the requirement is to outline the stall in blue for 18 feet in
length and on the ground inside the stall (in suitable contrasting
color) paint a profile view of a wheelchair with an occupant.
There is a lack of an accessible route of travel from the
designated accessible space because there is a lack of a curb cut,
a lack of a crosswalk, and individuals are required to travel
behind vehicles other than their own; the requirement is to
provide an accessible route of travel where a person with a
disability need only cross behind their own vehicle.   A curb cut
needs to be installed and a crosswalk should be painted showing a
safe and accessible way from the space to the building walkway.
There is a designated accessible space located between Building 2
and 3 that fails to provide the appropriate length, is not
properly striped, and has a slope that is in excess of 2%; the

requirement is to provide the minimum surface slope possible, not to exceed a 2% slope in any direction. This space also lacks an accessible route of travel from the accessible space to the building entrances because there is a lack of a curb cut, a crosswalk, and individuals are required to travel behind vehicles other than their own; the requirement is to provide an accessible route of travel where a person with a disability need only cross behind their own vehicle. A curb cut needs to be installed and a crosswalk should be painted showing a safe and accessible way from the space to the building walkway. The designated accessible space, as well as the Van Accessible space that are located behind Building 3 and on the fence, are not the appropriate length and have signage that are not visible because they are covered with plants; the requirement is to provide appropriate signage permanently posted immediately adjacent to and visible from each stall or space. This reflectorized sign must consist of a profile view of a wheelchair with an occupant in white on a dark blue background and when appropriate will have additional signage stating "van accessible" mounted below the symbol of accessibility. The designated accessible space located between Buildings 3 and 4 is not properly striped and lacks an accessible route of travel from the designated accessible space because there is a lack of a curb cut, a lack of a crosswalk, and individuals are required to travel behind vehicles other than their own. There are two (2) accessible spaces located behind Building 4 and on the fence that both fail to provide the appropriate length.

Also, the regular accessible space has signage that is not visible because it is covered with plants.

11.   The exterior path of travel throughout this facility is not accessible.  For example, there is a lack of an accessible route of travel from the public sidewalk and public transportation to the building walkways because individuals are required to travel in the parking lot without an accessible route of travel and there fails to be a designated crosswalk; the requirement is for an accessible route of travel to the entrance of all buildings.  A crosswalk should be painted showing a safe and accessible way from the public sidewalk to the building walkway.  Also, there is a lack of a safe route of travel to the swim and tennis club because individuals are required to travel in driving areas without an accessible route of travel; the requirement is for at least one accessible route to connect accessible buildings, facilities, elements, and spaces that are on the same sight. A crosswalk should be painted showing a safe and accessible way from the building walkways to the entrance of the club.

12.   The curb ramp located in front of the office is too steep to be accessible, as the slope is 12.2%; the requirement is for the slope not to exceed 8.33%.

13.   The Main Entrance lacks signage indicating that assistance for people with disabilities is available; this signage is recommended for sites that are not fully accessible.  This entrance also has an obstruction on the push side of the door; the requirement is for the bottom 10 inches of all doors to have a smooth, uninterrupted surface to allow the door to be opened by a

9

wheelchair footrest without creating a trap or hazardous condition.   There is a loose mat on the exterior side of the door; the requirement is for loose mats to be secured on all four sides or be removed.   Also, the door requires excessive force to open; the requirement is a maximum of 8.5 lbf for exterior doors.

14.   The information counter is too high at 48 inches; the requirement is to provide a lowered section of the counter that is a maximum of 34 inches in height for a length of 36 inches.

15.   When Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE attempted to reserve an accessible guestroom, he was informed there were no accessible rooms available at this location that have two (2) queen beds; the requirement is to provide accessible guest rooms or suites dispersed among the various classes of sleeping accommodations providing a range of options applicable to room sizes, costs, amenities provided, and the number of beds provided.

16.   In addition to the violations personally experienced by Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE, additional violations of federal and state disability laws exist in Defendants' establishment.   For example, The elevator at this facility is not accessible, as there fail to be audible signals; the requirement is for audible signals distinguishing up from down.   Also, the visual indicator on the first floor for the down button of this elevator does not operate; the requirement is for visual indication to show each call registered and extinguish when it is answered.

17.   The Pool and Jacuzzi areas are not accessible.  For example, there fails to be an assistive device provided for people with disabilities in gaining entry to the pool or Jacuzzi; this is a requirement.  Also, there is insufficient knee clearance under the water fountain; the requirement is to provide a wall-mounted or post-mounted cantilevered drinking fountain and water coolers with a clear knee space a minimum of 30 inches in width and 27 inches in height.

18.   The Swim and Tennis Club fails to be accessible.  For example, the guest services counter is too high; the requirement is to provide a lowered section of the counter that is a maximum of 34 inches in height for a length of 36 inches.  Also, the umbrellas in the pool area hang below 80 inches; the requirement is for walks, halls, corridors, passageways, aisles or other circulation spaces to have 80 inches clear headroom.

19.   The stairs located throughout the facility fail to be accessible.  For example, there are two (2) sets of stairs leading from the parking lot to the Building 1 walkway, both of which have inappropriate handrails on one side only; the requirement is to provide handrails, 34 to 38 inches above the nosing of the treads, on both sides that extend the one-foot beyond the top nosing and one foot, plus the tread width, beyond the bottom nosing.  The ends are to be returned, terminate in newel posts, or safety terminals, or extend out into the landing.  These stairs also have handrails that that lack the appropriate gripping surface; the requirement is to provide handrails that are between 1¼ inch and 1½ inch with no sharp edges.  There also fails to be non-skid

material on the steps; the requirement is to provide a strip of non-skid material at each riser.

The stairs leading to the Salon also have inappropriate handrails that lack the appropriate gripping surface and the required non-skid material on the steps.

There are four (4) sets of stairs leading to the Pool area of this facility, all of which have handrails that lack the appropriate gripping surface, and lack the required non-skid material on the steps.

The stairs leading from Building 3 and 4 to the Pool have inappropriate handrails on one side only. These stairs also have handrails that lack the appropriate gripping surface, as well as lack the required non-skid material on the steps.

The stairs leading to the Tennis Courts from the Pool fail to provide handrails at all.

There are two (2) sets of stairs located by Room 108, both of which have inappropriate handrails, have handrails that lack the appropriate gripping surface, and lack the required non-skid material on the steps.

The stairs located by Room 153 have handrails that lack the appropriate gripping surface, lack the required non-skid material on the steps, and lack striping for the visually impaired; the requirement for stairs outside a building is for the upper approach and all treads to be marked by a two-inch strip of clearly contrasting color.

The stairs located by Room 158 have handrails that lack the appropriate gripping surface, lack non-skid material on the steps, and lack striping for the visually impaired.

There are two (2) sets of stairs leading to Rooms 159 - 168, both of which have inappropriate handrails, lack the appropriate gripping surface, lack the required non-skid material on the step, and lack striping for the visually impaired.

20.   There are multiple ramps located throughout this facility, all of which fail to be accessible.  For example, the ram leading to the Tennis Courts from the Pool fails to provide handrails.

The ramp located near Enterprise, as well as near Staff Image, have handrails that lack the appropriate gripping surface.

The ramp leading to the walkway of the building is too steep; the requirement is for the slope of a ramp to be no more than 8.33%.

The ramp leading from the Tower Room to the walkway of the building is too steep and has handrails on one side only.

21.   The bank of five (5) Pay Telephones has a sign saying TDD is available, however this sign is not readily visible; the requirement is for a text telephone to be permanently affixed within or adjacent to the telephone enclosure.   Also, the Pay Telephone Booths near the elevator lack directional signage to the accessible telephones in the lobby; the requirement is for directional signage as needed to be visible to persons with disabilities along approaching pedestrian ways.   In addition, the exterior hardware requires tight grasping to operate; the requirement is to provide hardware that does not require tight

grasping or twisting of the wrist to operate.  This hardware is also mounted too high to be accessible; the requirement is for all door hardware to be centered between 30 inches and 44 inches from the floor.  There fails to be sufficient clear floor space provided for this pay telephone; the requirement in this situation is for at least one telephone to have a clear floor space of 30 inches by 48 inches.  Lastly, the top of the doorframe is mounted below 80 inches; the requirement is for walks, halls, corridors, passageways, aisles or other circulation spaces to have 80 inches clear headroom.

22.  The clear path of travel within Building 1 is blocked by laundry carts; the requirement is to provide a 36-inch route of travel.

23.  The house telephone is mounted too high; the requirement is a maximum of 48 inches to the coin deposit for a front approach.

24.  The Postcards American Bistro Restaurant fails to be accessible.  For example, the bar is too high, at 41 inches in height, and has 12 stools; where there is fixed seating, the requirement is for 5%, but no less than 1, to be accessible. Accessible seating requires a maximum bar height of 34 inches from the floor; a knee clearance of 27 inches in height that is 30 inches wide for a depth of 19 inches; a clear floor space of 30 inches in width by 48 inches deep, not to overlap knee clearance by more than 19 inches; the requirement is to provide one accessible wheelchair space, without a foot bar.  Within the lower dining area, there are 10 tables that are fixed or have fixed seating, none of which are accessible.  In addition, the upstairs

dining area has seven (7) tables that are fixed or have fixed seating, none of which are accessible.  This upper area has stairs that lack the required non-skid material on the steps, and lack striping for the visually impaired.

25.  Premier Ticket has a guest services counter that is too high to be accessible.

26.  The Gift Shop fails to provide signage on the doors or in the windows indicating that this facility is accessible; this is a requirement.  Also, the route of travel throughout the shop is less than 36 inches in some areas; the requirement is to provide a 36-inch route of travel.

27.  The Guest Laundry Room also fails to be accessible. For example, the sink rim is mounted too high; the requirement is a maximum mounting height of 34 inches.  Also, the faucets require tight grasping and twisting of the wrist to operate.  In addition, the laundry detergent dispenser is mounted with the operable parts too high; the requirement is for a maximum of 48 inches from the finished floor for a side approach or 54 inches for a front approach.  The counter in this are is too high to be accessible and the route of travel throughout the laundry room is less than 36 inches in some areas.

28.  The elevator located at this facility fails to be accessible.  For example, this elevator is too small at 80 inches by 40 inches; the requirement is for a cab of 80 inches by 54 inches. Also, the gap between the car platform sill and the edge of the hoist way landing is 1½ inches; the requirement is a maximum of 1¼ inches.

15

29.   There are Interior Stairs located throughout this facility that fail to be accessible.  For example, the stairs located near Enterprise have handrails that lack the appropriate gripping surface, Lack non-skid material on the steps.

The stairs located near Staffing Image fails to have handrails.

The stairs leading to the Board Rooms and Be Good to Yourself Massage have inappropriate handrails and handrails that lack the appropriate gripping surface.  These stairs also lack non-skid material on the steps and have open risers; the requirement is to provide closed risers on all stairs.

The stairs leading next to Tower Room 146 have inappropriate handrails, lack non-skid material on the steps, and lack striping for the visually impaired.

The stairs located inside all Four (4) Buildings leading to the guestrooms have inappropriate handrails, handrails that lack the appropriate gripping surface, lack the required non-skid material on the steps, lack striping for the visually impaired, and have open risers.

30.   The common area Restrooms located throughout the facility fail to be accessible.  For example, the Men's restroom located in the lobby, has an entrance door that requires excessive force to open.  Within this restroom, the sink has inappropriate insulation on the drain or hot water pipes of the sink to protect against contact; the requirement is to provide appropriate insulation. Also, the stall has exterior hardware that requires tight grasping to operate; the requirement is a loop or a U-shaped handle.   There

16

also fails to be interior hardware on this stall door; this is a requirement. In addition, the stall door is not self-closing; this is a requirement.

The Women's Restroom has an entrance door that requires excessive force to open. Also, the interior hardware requires tight grasping to operate. Within this restroom, the sink has inappropriate insulation on the drain or hot water pipes of the sink to protect against contact. The Feminine Hygiene Dispenser has hardware that requires tight grasping and twisting of the wrist to operate. In addition, the stall has exterior hardware requires tight grasping to operate, fails to provide interior hardware and is not self-closing; this is a requirement. The flush valve mechanism on the commode requires excessive force to operate.

The Men's Restroom located near the Directors Room has an entrance door that requires excessive force to open. The stall door has exterior hardware that requires tight grasping to operate, fails to provide interior hardware and fails to be self-closing.

The Women's Restroom entrance door requires excessive force to open, and has interior hardware that requires tight grasping to operate. Within this restroom, the sink has inappropriate insulation on the drain or hot water pipes of the sink to protect against contact. Also, the feminine hygiene dispenser is mounted with the operable parts too high, and has hardware that requires tight grasping and twisting of the wrist to operate. The stall door has exterior hardware that requires tight grasping to

operate, lacks interior and exterior hardware, and fails to be self-closing.

The Pool area Men's Restroom has a sink that lacks the inappropriate insulation on the drain or hot water pipes of the sink to protect against contact.  Also, the stall door has exterior hardware that requires tight grasping to operate and there is a lack of interior hardware.

The Women's Restroom in this Pool area, has an entrance door that requires excessive force to open, and has interior hardware that requires tight grasping to operate.  Within this restroom, the sink lacks the appropriate insulation on the drain or hot water pipes of the sink to protect against contact.  Also, the feminine hygiene dispenser is mounted with the operable parts too high and has hardware that requires tight grasping and twisting of the wrist to operate.  The stall door has exterior hardware requires tight grasping to operate and lacks interior hardware.

The restroom located near Enterprise has a loose mat on the exterior side of the door; the requirement is for loose mats to be secured on all four sides or be removed.

The restroom located at the Top of the ramp near the Lobby and Board Rooms also has exterior hardware that requires tight grasping to operate.

31.  The Salon entrance has an estimated 1inch threshold that is not beveled on the exterior side of the entrance door; the requirement is a maximum of ½ inch with a beveled edge or ¼ inch not beveled.  Also, the exterior and interior hardware requires

tight grasping to operate.  The hardware is mounted too high.  In addition, there is a loose mat on the exterior side of the door.

32.  The entrance to the Tower Room has exterior hardware that requires tight grasping to operate and the door requires excessive force to open.

33.  The private small room in the Postcards American Bistro Restaurant is inaccessible.  For example, the Foyer has an obstruction on the push side of the door; the requirement is for the bottom 10 inches of all doors to have a smooth, uninterrupted surface to allow the door to be opened by a wheelchair footrest without creating a trap or hazardous condition.

34.  The Premier Tickets entrance door has a metal frame area at the bottom that fails to have proper clearance.  Also, there is an obstruction on the push side of the door.

35.  The Show Time entrance door has a metal frame area at the bottom that does not have proper clearance.

36.  The Gift Shop fails to be accessible.  For example, there is a lack of signage indicating that assistance for people with disabilities is available.  Also, the metal frame area at the bottom of the door does not have proper clearance.

37.  Image Staffing has exterior hardware requires tight grasping to operate and the metal frame area at the bottom of the door does not have proper clearance.  In addition, there is an obstruction on the push side of the door.

38.  The Be Good To Yourself Massage Room has hardware on the entrance door that is too mounted too high to be accessible and requires tight grasping and twisting of the wrist to operate.

19

39.   The Guest Laundry Room entrance has an obstruction on the push side of the door, and has interior hardware requires tight grasping to operate; the requirement is to provide hardware that does not require tight grasping or twisting of the wrist to operate.

40.   The hallways leading to the guestrooms has an estimated 1 inch threshold that is not beveled on the exterior side of the entrance door.   Also, the exterior hardware is mounted too high and requires tight grasping to operate.

41.   The entrance to the Hallway of Rooms 101-123, as well as the entrance located near Room 146, has an obstruction on the push side of the door.

42.   The entrance to the hallway of Rooms 159-168 has exterior hardware requires tight grasping to operate, as well as an obstruction on the push side of the door.

43.   The Accessible Room 120 has a rear-sliding door that has an estimated 2-inch threshold that is not beveled on the exterior side of the entrance door, as well as hardware that requires tight grasping to operate.

44.   This facility fails to provide rooms for Hearing Impaired Guests; the requirement for a facility with 217 guest rooms, is to provide 7 rooms for hearing impaired guests.   These rooms must have auxiliary visual alarms, notification devices, and telephone accommodations.   There must also be 7 kits for the hearing impaired available, one for each accessible room.

45.   Based on these facts, Plaintiffs allege Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was discriminated against each

time he patronized Defendants' establishment.

46.    Pursuant to federal and state law, Defendants are required to remove barriers to their existing facilities.   Further, Defendants had actual knowledge of their barrier removal duties under the Americans with Disabilities Act and the Civil Code before January 26, 1992.   Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove architectural barriers.   Plaintiffs believes and herein allege Defendants' facilities have access violations not directly experienced by Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE which preclude or limit access by others with disabilities, including, but not limited to, Space Allowance and Reach Ranges, Accessible Route, Protruding Objects, Ground and Floor Surfaces, Parking and Passenger Loading Zones, Curb Ramps, Ramps, Stairs, Elevators, Platform Lifts (Wheelchair Lifts), Windows, Doors, Entrances, Drinking Fountains and Water Coolers, Water Closets, Toilet Stalls, Urinals, Lavatories and Mirrors, Sinks, Storage, Handrails, Grab Bars, and Controls and Operating Mechanisms, Alarms, Detectable Warnings, Signage, and Telephones. Accordingly, Plaintiffs allege Defendants are required to remove all architectural barriers, known or unknown.   Also, Plaintiffs allege Defendants are required to utilize the ADA checklist for Readily Achievable Barrier Removal approved by the United States Department of Justice and created by Adaptive Environments.

47.    Plaintiffs and Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE desire to return to Defendants' place of business in the

immediate future.

48.   Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was extremely upset due to Defendants' conduct.   Further, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE experienced pain in his legs, back, arms, shoulders and wrists when he attempted to enter, use, and exit Defendants' establishment.

**WHAT CLAIMS ARE PLAINTIFFS ALLEGING AGAINST EACH NAMED DEFENDANT**

49.   HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB; and HANDLERY HOTELS, INC. are the commercial tenants of the subject property.   HANDLERY HOLDING CO INC. is the commercial landlord of the subject property.

50.   Plaintiffs aver that the Defendants are liable for the following claims as alleged below:

### DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS-   **Claims Under The Americans With Disabilities Act Of 1990**

CLAIM I: **Denial Of Full And Equal Access**

51.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in this complaint, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations. Plaintiffs allege Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a). Thus, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was

subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiffs were denied equal access to Defendants' existing facilities.

52.    Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE has physical impairments as alleged in ¶ 7 above because his conditions affect one or more of the following body systems: neurological, musculoskeletal, special sense organs, and/or cardiovascular.  Further, his said physical impairments substantially limits one or more of the following major life activities:  walking.  In addition, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person.  Moreover, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM II: **Failure To Make Alterations In Such A Manner That The Altered Portions Of The Facility Are Readily Accessible And Usable By Individuals With Disabilities**

53.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in this complaint, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants. Defendants altered their facility in a manner that affects or could affect the usability of the facility or a part of the facility after January 26, 1992. In performing the alteration,

Defendants failed to make the alteration in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of 42 U.S.C. §12183(a)(2).

54.   Additionally, the Defendants undertook an alteration that affects or could affect the usability of or access to an area of the facility containing a primary function after January 26, 1992. Defendants further failed to make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms serving the altered area, are readily accessible to and usable by individuals with disabilities in violation 42 U.S.C. §12183(a)(2).

55.   Pursuant to 42 U.S.C. §12183(a), this failure to make the alterations in a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities constitutes discrimination for purposes of 42 U.S.C. §12183(a). Therefore, Defendants discriminated against Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE in violation of 42 U.S.C. § 12182(a).

56.   Thus, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of 42 U.S.C. § 12183(a), 42 U.S.C. §12182(a) and 42 U.S.C. §12188 because said Member and Plaintiff WALTER LEE DEGROOTE was denied equal access to Defendants' existing facilities.

CLAIM III: **Failure To Remove Architectural Barriers**

57.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in

this complaint, Plaintiff's Member and Plaintiff WALTER LEE
DEGROOTE was denied full and equal access to Defendants' goods,
services, facilities, privileges, advantages, or accommodations
within a public accommodation owned, leased, and/or operated by
Defendants. Defendants failed to remove barriers as required by 42
U.S.C. § 12182(a).  Plaintiffs are informed and believe, and thus
allege that architectural barriers which are structural in nature
exist at the following physical elements of Defendants'
facilities: Space Allowance and Reach Ranges, Accessible Route,
Protruding Objects, Ground and Floor Surfaces, Parking and
Passenger Loading Zones, Curb Ramps, Ramps, Stairs, Elevators,
Platform Lifts (Wheelchair Lifts), Windows, Doors, Entrances,
Drinking Fountains and Water Coolers, Water Closets, Toilet
Stalls, Urinals, Lavatories and Mirrors, Sinks, Storage,
Handrails, Grab Bars, and Controls and Operating Mechanisms,
Alarms, Detectable Warnings, Signage, and Telephones.  Title III
requires places of public accommodation to remove architectural
barriers that are structural in nature to existing facilities.
[See, 42 United States Code 12182(b)(2)(A)(iv).]  Failure to
remove such barriers and disparate treatment against a person who
has a known association with a person with a disability are forms
of discrimination.  [See 42 United States Code
12182(b)(2)(A)(iv).]  Thus, Plaintiff's Member and Plaintiff
WALTER LEE DEGROOTE was subjected to discrimination in violation
of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188
because said Member and Plaintiff WALTER LEE DEGROOTE was denied
equal access to Defendants' existing facilities.

CLAIM IV: **Failure To Modify Practices, Policies And Procedures**

58.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a).  Thus, said Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because said Member and Plaintiff WALTER LEE DEGROOTE was denied equal access to Defendants' existing facilities.

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS - **CLAIMS UNDER CALIFORNIA ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

59.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in this complaint, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54 and 54.1. Defendants' facility violated California's Title 24 Accessible Building Code by failing to provide access to Defendants' facilities due to violations pertaining to the Space Allowance and Reach Ranges, Accessible Route, Protruding Objects, Ground and Floor Surfaces, Parking and Passenger Loading Zones, Curb Ramps,

Ramps, Stairs, Elevators, Platform Lifts (Wheelchair Lifts), Windows, Doors, Entrances, Drinking Fountains and Water Coolers, Water Closets, Toilet Stalls, Urinals, Lavatories and Mirrors, Sinks, Storage, Handrails, Grab Bars, and Controls and Operating Mechanisms, Alarms, Detectable Warnings, Signage, and Telephones.

60.    These violations denied Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE full and equal access to Defendants' facility. Thus, said Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination pursuant to Civil Code §§ 51, 52, and 54.1 because Plaintiffs were denied full, equal and safe access to Defendants' facility, causing severe emotional distress.

CLAIM II: **Failure To Modify Practices, Policies And Procedures**

61.    Based on the facts plead at ¶¶ 7-48 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1.  Thus, said Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of Civil Code § 54.1.

CLAIM III: **Violation Of The Unruh Act**

62.    Based on the facts plead at ¶¶ 7-48 above and elsewhere herein this complaint and because Defendants violated the Civil Code § 51 by failing to comply with 42 United States Code 12182(b)(2)(A)(iv), Defendants did and continue to discriminate against Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and

persons similarly situated in violation of Civil Code §§ 51, 52, and 54.1.

## Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws

63.   Defendants, each of them, at times prior to and including during the month of January, 2002, respectively, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all potions of this public facility.  Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and other similarly situated persons with disabilities.  Defendants, and each of them, have failed and refused to take action to grant full and equal access to persons with physical disabilities in the respects complained of hereinabove.  Defendants, and each of them, have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make the subject HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB facility accessible pursuant to the Americans With Disability Act Access Guidelines (ADAAG) and Title 24 of the California Code of Regulations (also known as the California Building Code).  Such actions and continuing course of conduct by Defendants, and each of them, evidence despicable conduct in conscious disregard of the rights and/or safety of Plaintiff's Member and Plaintiff WALTER

LEE DEGROOTE and of other similarly situated persons, justifying an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code.

64.   Defendants', and each of their, actions have also been oppressive to persons with physical disabilities and of other members of the public, and have evidenced actual or implied malicious intent toward those members of the public, such as Plaintiffs and other persons with physical disabilities who have been denied the proper access to which they are entitled by law. Further, Defendants', and each of their, refusals on a day-to-day basis to correct these problems evidence despicable conduct in conscious disregard for the rights of Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and other members of the public with physical disabilities.

65.   Plaintiffs pray for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a), in an amount sufficient to make a more profound example of Defendants and encourage owners and operators of other public facilities from willful disregard of the rights of persons with disabilities.   Plaintiffs do not know the financial worth of Defendants, or the amount of treble damages sufficient to accomplish the public purposes of section 52(a) of the California Civil Code and section 54.3 of the California Civil Code.

66.   Wherefore, Plaintiffs pray for damages and relief as hereinafter stated.

THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS - **Violation of**

**Business and Professions Code section 17200 et seq.**

67.   Plaintiffs incorporate by reference herein the facts plead at ¶¶ 7 - 48 above and elsewhere in this complaint.

68.   Defendants failed to remove obstructions in the disabled parking, exterior path of travel, access ramp, stair, entrance, interior path of travel, customer service counter, elevator, public restroom, pool, public payphone and guestroom facilities in Defendants' HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB establishment.   Pursuant to federal law, Defendants are required to remove barriers to their existing facilities. Title III of the Americans With Disabilities Act requires places of public accommodation to remove architectural barriers that are structural in nature to existing facilities. [42 United States Code 12182(b)(2)(A)(iv).]   Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination.   [See 42 United States Code 12182(b)(2)(A)(iv).]   Thus, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because said Member and Plaintiff WALTER LEE DEGROOTE was denied equal access to Defendants' existing facilities.   Also, Defendants' facilities failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a).   Thus, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff's Member and Plaintiff WALTER LEE

DEGROOTE was denied equal access to Defendants' existing

facilities. Additionally, as a result of said access barriers,

Defendants failed and refused to provide a reasonable alternative

by modifying its practices, policies and procedures in that they

failed to have a scheme, plan, or design to assist Plaintiff's

Member and Plaintiff WALTER LEE DEGROOTE and/or others similarly

situated in entering and utilizing Defendants' services, as

required by 42 U.S.C. § 12188(a). Thus, said Member and Plaintiff

WALTER LEE DEGROOTE was subjected to discrimination in violation

of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188

because said Member and Plaintiff WALTER LEE DEGROOTE was denied

equal access to Defendants' existing facilities.

69.  Pursuant to state law, Defendants are also required to remove

barriers to their existing facilities. These violations denied

Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE full and

equal access to Defendants' facilities. Thus, said Member and

Plaintiff WALTER LEE DEGROOTE was subjected to discrimination

pursuant to Civil Code §§ 51, 52, and 54.1 because Plaintiff's

Member and Plaintiff WALTER LEE DEGROOTE was denied full, equal

and safe access to Defendants' facility.  Further, Defendants'

facility, and other goods, services, and/or facilities provided to

the public by Defendants are not accessible to and usable by

persons with disabilities as required by Health and Safety Code §

19955 which requires private entities to make their facility

accessible before and after remodeling, and to remove

architectural barriers on and after AB 1077 went into effect.

Additionally, Defendants failed and refused to provide a

reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1. Thus, said Member and Plaintiff WALTER LEE DEGROOTE was subjected to discrimination in violation of Civil Code § 54.1. Also, under the Unruh Act, Defendants violated the Civil Code § 51 by failing to comply with 42 United States Code 12182(b)(2)(A)(iv), Defendants did and continue to discriminate against Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE and persons similarly situated in violation of Civil Code §§ 51, 52, and 54.1. Further, Defendants had actual knowledge of their barrier removal duties under the Americans with Disabilities Act, the California Civil Code, and the California Health & Safety Code before January 26, 1992.

70. Business and Professions Code section 17200 defines "unfair competition" and prohibited activities as, ". . . **any unlawful, unfair or fraudulent business act or practice** and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (emphasis added). Defendants' acts and omissions alleged herein are violations of the above-enumerated federal and state statutory requirements and public policy and therefore constitute unfair competition and/or prohibited activities as such violations are *unlawful, unfair or fraudulent business acts or practices*. Defendants' alleged unlawful, unfair, or fraudulent business acts or practices are

specifically prohibited by the specific introductory language of B&P section 17200 that is stated in the conjunctive. Consequently, Plaintiffs allege that Defendants' acts and omissions constitute a violation specifically of this section 17200 of the Business and Professions Code.

71.   Plaintiffs seek injunctive relief requiring Defendants to remedy the disabled access violations present at the Defendants' facilities.   Ancillary to this injunctive relief, Plaintiffs also request restitution for amounts paid by Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE who attempted to visit and patronize Defendants' facilities during the time period that the subject premises have been in violation of the disabled access laws of the State of California.

72.   Plaintiffs seek, on behalf of the general public, injunctive relief requiring Defendants to comply with the disabled access laws of the State of California at facilities throughout the State of California built, owned, operated, and/or controlled by Defendants.

73.   WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS- **Negligence**

74.   Based on the facts plead at ¶¶ 7-48 above and elsewhere in this complaint, Defendants owed Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE a statutory duty to make their facility accessible and owed Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE a duty to keep Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE reasonably safe from known dangers and risks of harm.

This said duty arises by virtue of legal duties proscribed by various federal and state statutes including, but not limited to, ADA, ADAAG, Civil Code 51, 52, 54, 54.1 and Title 24 of the California Administrative Code and applicable 1982 Uniform Building Code standards as amended.

75.    Title III of the ADA mandates removal of architectural barriers and prohibits disability discrimination.  As well, Defendants' facility, and other goods, services, and/or facilities provided to the public by Defendants are not accessible to and usable by persons with disabilities as required by Health and Safety Code § 19955 which requires private entities to make their facility accessible before and after remodeling, and to remove architectural barriers on and after AB 1077 went into effect.

76.    Therefore, Defendants engaged in discriminatory conduct in that they failed to comply with known duties under the ADA, ADAAG, Civil Code 51, 52, 54, 54.1, ADAAG, and Title 24, and knew or should have known that their acts of nonfeasance would cause Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE emotional, bodily and personal injury.  Plaintiffs allege that there was bodily injury in this matter because when Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE attempted to enter, use, and exit Defendants' establishment, Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE experienced pain in his legs, back, arms, shoulders, and wrists.  Plaintiffs further allege that such conduct was done in reckless disregard of the probability of said conduct causing Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE to suffer bodily or personal injury, anger, embarrassment, depression,

anxiety, mortification, humiliation and distress. Plaintiffs allege that such conduct caused Plaintiffs' Member and Plaintiff WALTER LEE DEGROOTE to suffer the injuries of mental and emotional distress, including, but not limited to, anger, embarrassment, depression, anxiety, mortification, humiliation, distress, and fear of physical injury.  Plaintiffs  additionally allege that such conduct caused Plaintiff's Member and Plaintiff WALTER LEE DEGROOTE to suffer damages as a result of these injuries.

### DEMAND FOR JUDGMENT FOR RELIEF:

A.    For general damages pursuant to Cal. Civil Code §§ 52, 54.3, 3281, and 3333;

B.    For $4,000 in damages pursuant to Cal. Civil Code § 52 for each and every offense of Civil Code § 51, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

C.    In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph B above, for $1,000 in damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

D.    For injunctive relief pursuant to 42 U.S.C. § 12188(a) and Cal. Civil Code § 55.  Plaintiffs request this Court enjoin Defendants to remove all architectural barriers in, at, or on their facilities related to the following: Space Allowance and Reach Ranges, Accessible Route, Protruding Objects, Ground and Floor Surfaces, Parking and Passenger Loading Zones, Curb Ramps,

Ramps, Stairs, Elevators, Platform Lifts (Wheelchair Lifts),

Windows, Doors, Entrances, Drinking Fountains and Water Coolers,

Water Closets, Toilet Stalls, Urinals, Lavatories and Mirrors,

Sinks, Storage, Handrails, Grab Bars, and Controls and Operating

Mechanisms, Alarms, Detectable Warnings, Signage, and Telephones.

E.     For attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C.

§ 12205, and Cal. Civil Code § 55;

F.     For treble damages pursuant to Cal. Civil Code §§  52(a),

and 54.3(a);

G.     For Restitution pursuant to Business and Professions section

17200;

H.     A Jury Trial and;

I.     For such other further relief as the court deems proper.


Respectfully submitted:

                              PINNOCK & WAKEFIELD

Dated: January 22, 2003

                         By:_____
                              THEODORE A. PINNOCK, ESQ.
                              DAVID C. WAKEFIELD, ESQ.
                              MICHELLE L. WAKEFIELD, ESQ.
                              Attorneys for Plaintiffs

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ORGANIZATION FOR ACCESSIBLE RIGHTS IN THE NEW MILLENNIUM SUING ON BEHALF OF WALTER LEE DEGROOTE AND ITS MEMBERS; and WALTER LEE DEGROOTE, An Individual | HANDLERY HOTEL AND RESORT, a.k.a. HANDLERY HOTEL AND COUNTRY CLUB; HANDLERY HOTELS, INC.; HANDLERY HOLDING COING |

FILED
03 JAN 22 PM 3: 55

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   San Diego<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

DEPUTY

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Theodore A. Pinnock, Esq.     SBN: 153434<br>Michelle L. Wakefield, Esq.     SBN 200424<br>Pinnock & Wakefield<br>7966 Arjons Drive, Suite 119<br>San Diego, California  92126<br>Telephone: (858) 689-1750; Facsimile: (858) 689-1950 | '03 CV 00137 J   (AJB) |

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

| | PT DEF | | PT DEF |
|---|---|---|---|
| Citizen of This State | ☐ 1 ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 ☐ 4 |
| Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

42 U.S.C. Sections 12101-12102, 12181-12183, and 12201, Et. Seq.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure Of Property 21 USC 881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ Negotiable Initrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appelate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $<br>TO BE DETERMINED AT TRIAL | Check YES only if demanded in complaint:<br>JURY DEMAND: ☒ YES ☐ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

| DATE  January 22, 2003 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

#090650   $150.00